UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

WOODROW FLEMMING,

                          Plaintiff,

                                                 9:11-CV-00804

v.

                                                 (NAM/TWD)

NANCY SMITH, et al.,

                          Defendants.
_____

APPEARANCES:                         OF COUNSEL:

WOODROW FLEMMING
Plaintiff *pro se*
03-A-5259
Upstate Correctional Facility
P.O. Box 2001
Malone, New York 12953

HON. ERIC T. SCHNEIDERMAN         RICHARD  LOMBARDO
Attorney General for the State of New York    Assistant Attorney General
Counsel for Defendants
The Capitol
Albany, New York 12224

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

### <u>REPORT-RECOMMENDATION AND ORDER</u>

       This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983,

has been referred to me for Report and Recommendation pursuant to 28 U.S.C. § 636(b) and

N.D.N.Y. L.R. 72.3(c).  Plaintiff Woodrow Flemming's Complaint originally set forth nine

causes of action alleging numerous claims against forty-two defendants arising out of his

confinement at Upstate Correctional Facility ("Upstate").[1]  (Dkt. No. 1.)  By Decision and Order

dated June 28, 2012, the Hon. Norman A. Mordue, United States District Judge, dismissed all

but two of Plaintiff's causes of action pursuant to 28 U.S.C. § 1915A(b).  (Dkt. No. 21.)  The two

surviving causes of action allege the denial of adequate and proper medical care and deliberate

indifference to Plaintiff's serious medical needs in violation of his rights under the Eighth

Amendment by remaining defendants, Upstate medical staff members Nancy Smith ("Smith"),

Nurse Administrator; Evelyn Weissman ("Weissman"), M.D.; Richard Adams ("Adams"), M.D.;

Patrick Johnson ("Johnson"), P.A.; Glenn Schruyer ("Schruyer"), R.N. II; Dianna Harvey

("Harvey"), R.N. II; Patsy Nakahara ("Nakahara"), R.N. II; George Waterson ("Waterson"), R.N.

II; Marla Travers ("Travers"), R.N. II; Elizabeth White ("White"), R.N. II; Renee Holmes

("Holmes"), R.N. II; Dana Griffith ("Griffith"), R.N. II; Julia Gordon ("Gordon"), R.N. II; David

Hammac ("Hammac"), R.N. II; Rodney Cook ("R. Cook"), R.N. II; Neil Cook ("N. Cook"), R.N.

II; James Chesbrough ("Chesbrough"), R.N. II; Christy Conklin ("Conklin"), R.N. II; Kathy

Sullivan ("Sullivan"), R.N. II; Rosanna Lordi ("Lordi"), R.N. II; and Candy Atkinson

("Atkinson"), R.N. II.  (Dkt. Nos. 1 at ¶¶ 23-43; 21 at 9-11.)

     The remaining Defendants now move to dismiss Plaintiff's Complaint for lack of

personal jurisdiction and failure to state a claim pursuant to Rule 12(b)(2) and (b)(6) of the

Federal Rules of Civil Procedure.  (Dkt. No. 36.)  Plaintiff has filed papers in opposition.  (Dkt.

No.  39.)  For the reasons that follow, I recommend that Defendants' Rule 12(b)(6) motion be

granted and the Complaint dismissed with leave to amend.  Because I also find that service of the

---

[1]  According to Plaintiff, "[t]his Complaint has consolidated issues from July 2008 within 3 years filing."  (Dkt. No. 1 at ¶ 56.)

Summons and Complaint was not properly effected on any of the Defendants, I recommend that in the event Plaintiff is granted leave and elects to serve an amended complaint which survives initial review, that new summonses be issued for those Defendants named in the amended complaint, and Plaintiff be given additional time to effect proper service of the summons and amended complaint on the Defendants.

## I.    PROCEDURAL HISTORY

Plaintiff filed his Complaint in this action on July 14, 2011. (Dkt. No. 1.) He filed a motion to proceed *in forma pauperis* on August 26, 2011. (Dkt. No. 8.) By Decision and Order dated November 23, 2011, Judge Mordue found that the three-strikes provision of 28 U.S.C. § 1915(g) barred Plaintiff from proceeding *in forma pauperis* and without prepayment of the filing fee.[2] (*See* Dkt. No. 14.) Judge Mordue ordered Plaintiff to pay the full filing fee of $350 within thirty days of the filing of his Decision and Order. *Id*. at 6. Plaintiff paid the filing fee.

On June 12, 2012, Plaintiff asked that the action be stayed for ten months because he would be unable to effect service before that time. (Dkt. No. 20.) In the June 28, 2012, Decision and Order in which he dismissed all but the Seventh and Ninth Causes of Action in Plaintiff's Complaint, Judge Mordue denied Plaintiff's request for a stay, ordered the Clerk's office to issue summonses and forward them to Plaintiff for service of process upon the remaining Defendants, and directed those Defendants to respond to the claims in Plaintiff's Seventh and Ninth Causes of

---

[2] In finding the three-strikes rule applicable, Judge Mordue noted that Plaintiff had filed over forty lawsuits, including more than thirty civil rights actions, in courts of this Circuit since 1977. (Dkt. No. 14 at 2, n.1.)

Action.[3]  (Dkt. No. 21 at 12.)

Plaintiff filed Affirmations of Service showing July 18, 2012 service on all of the remaining Defendants using Upstate intra-facility mail.  (Dkt. No. 27.)  Plaintiff later filed Affirmations of Service of Amended Summonses on Defendants Lordi and Nakahama using Upstate intra-facility mail on July 24, 2012, and July 14, 2012, respectively.  (Dkt. Nos. 29, 30.)

Defendants thereafter filed the Rule 12(b)(2) and (b)(6) motion to dismiss now before me. (Dkt. No. 36.)  On August 6, 2012, after receiving Defendants' motion papers, Plaintiff sent a letter faulting the Court for not making clear to him the manner in which the Summons and Complaint should have been served on Defendants and requesting the opportunity to re-serve Defendants with the Court's assistance.  (Dkt. No. 32.)  In an August 19, 2012, letter to the Clerk, Plaintiff asked for issuance of new summonses so that he could re-serve the Defendants by mail.  (Dkt. No. 33.)  Plaintiff sent a second letter to the Clerk on September 3, 2012, again asking that new summonses be issued so that he could re-serve Defendants.  (Dkt. No. 34.) Plaintiff thereafter filed papers in opposition to Defendants' motion.  (Dkt. No. 39.)

## II.    BACKGROUND

Plaintiff has been confined at Upstate since being transferred there in 2005 for infirmary placement while he served time in the Special Housing Unit.  (Dkt. No. 1 at 22-23.)  In his Complaint, Plaintiff has consolidated all of his complaints concerning his care and treatment by

---

[3]  Judge Mordue dismissed the action in its entirety as against original Defendants Wright, Goord, Fischer, LeClaire, Grinsberg, Selsky, Rock, Bellnier, Woods, Otis, Boucoud, Lira, Uhler, Bezio, Zerniak, Quinn, Bishop, Rendle, LaRose, Duvall, Eddy, and Santamore. (Dkt. No. 21.)  Plaintiff's Fourth Cause of Action was dismissed as against Defendants Smith and Weissman, who remain Defendants with regard to Plaintiff's Seventh and Ninth Causes of Action.  (Dkt. No. 21 at 12.)

the medical staff at Upstate during the time period from July 2008 to the commencement of this action  *Id.* at ¶ 56.

## A.   Complaint of General Weakness in October 2009

Plaintiff contends that in October of 2009, he complained of feeling weak to Defendants Johnson, Atkinson, Sullivan, Smith, White, Harvey, and Nakahara.  (Dkt. No. 1 at second ¶ 73.) Although Plaintiff has alleged that the Defendants to whom he complained failed to act in response to his complaints*,* he has acknowledged in his Complaint that he was taken to the hospital three times in connection with the weakness.   *Id.*  The third time, blood work revealed Plaintiff may have been being over-medicated at Upstate.  *Id.*

## B.   Plaintiff's Left Shoulder, Back, Hip, and Knee Complaints and Loss of his Cane and Pain Medication

Plaintiff also claims that he had serious medical problems with his left shoulder, back, hip and knees.  *Id.* at ¶¶ 61, 63, 65, 67, 72.  He alleges in his Complaint that Defendants knew of the problems and Plaintiff's need for treatment, failed to diagnose his problems, and denied his requests to be examined by a doctor and given treatment and therapy.[4]  *Id.* at  ¶¶ 61, 63, 65, 67, 72, 74.  Plaintiff has identified the Defendants to whom he complained about his left shoulder, back, hip, and knee as Weissman, Smith, Johnson, Nakahara, Waterson, White, Holmes, Griffith, Gordon, Hammac, R. Cook, N. Cook, Chesbrough, Sullivan, Lordi, and Atkinson.  *Id.* at ¶¶ 72, first 73.

Plaintiff also complains that on July 29, 2010, Defendant Adams, a physician at Upstate, took away the walking cane Plaintiff used for his left side and left leg weakness, along with his

---

[4]  Plaintiff's Complaint contains a general allegation that he was denied pain medication, which may relate to his shoulder, back, hip, and knee problems.  (Dkt. No. 1 at ¶ 79.)

pain medication, without an examination or therapy.[5]  *Id*. at ¶ 68.

## C.    Concussion, Head Pain and Nosebleeds

On September 28, 2010, Plaintiff fell and was taken to the emergency room at the Alyce

Hyde Medical Center in Malone, New York, by authorization of Defendant Weissman, another

Upstate physician.  (Dkt. Nos. 1 at ¶ 74; 39-1 at 7-9.)  X-rays taken of Plaintiff's lumbar spine,

left shoulder, left hip, left knee, pelvis, c-spine, chest and ribs were negative.  (Dkt. No. 1 at 52.)

Plaintiff was also given a head CT scan and diagnosed with a concussion.[6]  *Id*.; Dkt. No. 39-1 at

9.

Plaintiff has alleged that his concussion was never addressed after he returned to Upstate.[7]

(Dkt. No. 1 at ¶ 74.)  Plaintiff claims that he had head pain and nose bleeds and complained

about them to Defendants Adams, Smith, Waterson, Atkinson, Sullivan, Lordi, Conklin,

Hammac, Travers, White, Holmes, Griffith, R. Cook, and Schruyer over the nine months

following his concussion.  *Id*. at ¶¶ 74-75, 77.

---

[5]  Plaintiff also alleges that the "medical staff took away Plaintiff's walking cane."  (Dkt. No. 1 at ¶ 61.)  Given the conclusory nature of that allegation and the more specific claim that it was Defendant Adams who took away his cane, I am treating Plaintiff's Complaint as asserting the claim only against Adams.

[6]  I have considered the hospital discharge instructions and various other medical records submitted by Plaintiff in opposition to Defendants' motion because they are consistent with the allegations in the Complaint.  *See Donhauser v. Goord*, 314 F. Supp.2d 119, 121 (N.D.N.Y. 2004), *vacated and amended in part on other grounds*, 317 F. Supp. 2d 160 (N.D.N.Y. 2004).  I have not considered those documents submitted by Plaintiff in opposition to Defendants' motion that appear inconsistent with the allegations in his Complaint.  *Id*.

[7]  Plaintiff's general allegation that he was denied pain medication may relate to his claim that he was not given treatment for the headaches he attributes to his concussion.  (Dkt. No. 1 at ¶ 79.)

**D.      High Blood Platelet Count**

Plaintiff was given a blood test that revealed his blood platelet count was somewhat

elevated.  *Id.* at ¶ 76.  The results of a follow up test on March 14, 2011, showed a more

significantly elevated count of 869.  *Id*. at ¶ 78 and 26.  The normal range is 144-400.  *Id*.  While

Plaintiff has alleged that the medical staff did nothing for him, he has also acknowledged in his

Complaint that a decision was made to send to him to an outside doctor in April of 2011.  *Id*. at

¶ 79.  Defendant Adams ordered a hematology consult based upon the blood test results and

report.  (Dkt. No. 39-1 at 38.)  Plaintiff signed a contract for specialty care on March 21, 2011.

*Id.*  Plaintiff was seen by a hematologist on April 26, 2011, and the results of his blood work

were reviewed by a provider on May 2, 2011.  (Dkt. No. 1 at 35.)  No blood clot was noted on

the hematology exam.  Based upon the hematologist's recommendation, Plaintiff was prescribed

Hydroxyurea 500 mg twice daily, ASA 325 mg daily, and an abdominal ultrasound and a follow-

up hematology consult was ordered.  *Id*.

## III.     LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

A defendant may move to dismiss a complaint "for failure to state a claim upon which

relief can be granted" under Rule 12(b)(6).  The motion tests the formal legal sufficiency of the

complaint by determining whether it conforms to Rule 8(a)(2) of the Federal Rules of Civil

Procedure, which requires that a complaint include "a short and plain statement of the claim

showing that the pleader is entitled to relief."  *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y.

1972).  Satisfaction of the requirement that a plaintiff "show" that he or she is entitled to relief

requires that the complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense . . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not shown -- that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation omitted).

A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim that is plausible on its face." *Id.* at 570. While Federal Rule of Civil Procedure 8(a)(2), which sets forth the general rules of pleading, "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me-accusation." *Iqbal,* 556 U.S. at 678 (citation and internal quotation marks omitted). A complaint which "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice. *Id.* (citation omitted)

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

In considering a Rule 12(b)(6) motion, "the court considers the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial

notice for the factual background of the case." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (citation and internal quotation marks omitted); *see also Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (A court may consider "any written instrument attached [to the complaint] as an exhibit or documents incorporated in it by reference."). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citation and internal quotation marks omitted). If the allegations in a plaintiff's complaint are contradicted by documents properly considered by the court on a Rule 12(b)(6) motion, those allegations are insufficient to defeat a motion to dismiss. *See Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 399-400 ) (S.D.N.Y. 2002).

Where a party is proceeding *pro se*, the court is obliged to "read [the *pro se* party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (courts remain obligated to construe *pro se* complaints liberally even after *Twombly*). Furthermore, "[i]n cases where a *pro se* plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they are consistent with the allegations in the complaint." *See, e.g., Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (considering factual allegations in plaintiff's opposition papers) (citations and internal quotations marks omitted), *vacated and amended in part on other grounds*, 317 F. Supp. 2d 160 (N.D.N.Y. 2004).

Where a *pro se* complaint fails to state a cause of action, the court generally "should not

dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco*, 222 F.3d at 112 (citation omitted).

## IV.    PLAINTIFF'S EIGHTH AMENDMENT MEDICAL INDIFFERENCE CLAIMS

Plaintiff's Seventh and Ninth Causes of Action allege that Defendants denied him medical care and showed deliberate indifference to his serious medical needs in violation of his Eighth Amendment rights. (Dkt. No. 1 at ¶¶ 61, 63-80.) Claims that prison officials have intentionally disregarded an inmate's serious medical needs fall under the Eighth Amendment umbrella of protection from the imposition of cruel and unusual punishments. *Farmer v. Brennan,* 511 U.S. 825, 832 (1994). Prison officials must ensure, among other things, that inmates receive adequate medical care. *Id*. (citing *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

A claim that prison officials have intentionally disregarded an inmate's serious medical needs has both objective and subjective elements. *See Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009). "The plaintiff must show that she or he had a serious medical condition and that it was met with deliberate indifference." *Id*. at 72. (citation and internal quotation marks omitted). "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003) (citation omitted).

Analyzing the objective element of an Eighth Amendment medical care claim requires two inquiries. "The first inquiry is whether the prisoner was actually deprived of adequate medical care." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006). The word "adequate" reflects the reality that "[p]rison officials are not obligated to provide inmates with whatever care the inmates desire. Rather, prison officials fulfill their obligations under the Eighth Amendment when the care provided is 'reasonable.'" *Jones v. Westchester County Dept. of Corrections Medical Dept.*, 557 F. Supp.2d 408, 413 (S.D.N.Y. 2008) (quoting *Salahuddin*, 467 F.3d at 820).

The second inquiry is "whether the inadequacy in medical care is sufficiently serious. This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin*, 467 F.3d at 820. The focus of the second inquiry depends on whether the prisoner claims to have been completely deprived of treatment or whether he claims to have received treatment that was inadequate. *Id*. If "the unreasonable medical care is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious." *Id.*

A "serious medical condition" is "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J. dissenting) (citations omitted), *accord Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). Relevant factors to consider when determining whether an alleged medical condition is sufficiently serious include, but are not limited to: (1) the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; (2) the presence of a medical condition that significantly

affects an individual's daily activities; and (3) the existence of chronic and substantial pain. *Chance*, 143 F.3d at 702-03.

Under the subjective element, medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act . . . that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Id.* at 703 (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)). "Deliberate indifference requires more than negligence but less than conduct undertaken for the very purpose of causing harm." *Hathaway*, 37 F.3d at 66. To establish deliberate indifference, an inmate must prove that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference. *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 702. The inmate then must establish that the provider consciously and intentionally disregarded or ignored that serious medical need. *Farmer*, 511 U.S. at 835. An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976). Moreover, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim . . . under the Eighth Amendment."[8] *Id.* at 106. Stated another way, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.*; *see also Smith*, 316 F.3d at 184 ("Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in

---

[8] Plaintiff contends that Defendants were negligent in failing to provide him with needed therapy and medical care and treatment. (Dkt. No. 1 at ¶ 61, 80.) However, "negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998).

prison medical care will rise to the level of a constitutional violation."). However, malpractice that amounts to culpable recklessness constitutes deliberate indifference. Accordingly, "a physician may be deliberately indifferent if he or she consciously chooses an easier and less efficacious treatment plan." *Chance*, 143 F.3d at 703 (quoting *Hathaway*, 99 F.3d at 553).

### A. Plaintiff's Weakness Claim

Plaintiff alleges that in October of 2009, he complained of weakness, was taken to the hospital twice, and when he was taken a third time after falling, blood work indicated that he might be over-medicated.[9] (Dkt. No. 1 at ¶ 73.) While acknowledging the hospital visits and diagnosis, Plaintiff nonetheless contends that no one did anything to address his weakness problem despite his complaints to Defendants Johnson, Atkinson, Sullivan, Smith White, Harvey, and Nakahara. *Id*. Inasmuch as Plaintiff has admitted being taken to the hospital for his weakness no less than three times, the Complaint does not make a plausible showing that he was deprived of adequate medical care by the Defendants accused of failing to respond to his complaints. There is some doubt as to whether the conclusory allegations in Plaintiff's Complaint, even when considered with the medical records submitted by Plaintiff revealing a diagnosis of mild orthostasis and recommendation that his medications be reduced, are sufficient to plead a serious medical condition. However, because the Upstate medical staff found

---

[9] Plaintiff has submitted records in opposition to Defendants' motion which reflect an emergency room visit to Alice Hyde Medical Center on October 5, 2009, for a syncopal episode. (Dkt. No. 39-1 at 18.) The triage narrative noted that Plaintiff had been seen there over the weekend for the same problem. *Id*. Plaintiff claims that when he awoke in the morning he became very dizzy and fell when he stood up. *Id*. The hospital discharge instructions included a suggestion that Plaintiff's Lasix and Doxazocin be decreased as that should resolve his mild orthostasis. *Id*. at 15. I will infer for purposes of this motion that the medical records submitted in opposition relate to Plaintiff's claim of weakness in October of 2009.

Plaintiff's condition sufficiently serious to have him taken to the hospital three times, I will

assume for purposes of this motion that Plaintiff has satisfied the objective element of his claim.

Plaintiff has, however, failed to make a facially plausible showing of deliberate

indifference.  *See Chance*, 143 F.3d at 703 ("medical mistreatment rises to the level of deliberate

indifference only when it involves culpable recklessness, i.e., an act or a failure to act . . . that

evinces a conscious disregard of a substantial risk of serious harm.") (citation and internal

quotation marks omitted).  Plaintiff's sole allegation in support of the subjective element of his

claim is his conclusory assertion that he complained to seven of the Defendants about his

weakness, and they did nothing.[10]  *Id.*  Plaintiff has failed to allege any non-conclusory facts

suggesting knowledge or recklessness on the part of any of those Defendants.[11]  *See Chance*, 143

F.3d at 702.

Conclusory allegations that medical staff defendants were aware of a plaintiff's medical

needs and failed to provide adequate care are generally insufficient to defeat a motion to dismiss

an Eighth Amendment claim of inadequate medical care.  *See, e.g., Gumbs v. Dynan*, No. 11-CV-

857 (RRM)(LB), 2012 WL 3705009, at *12, 2012 U.S. Dist. LEXIS 120664, at *36 (E.D.N.Y.

Aug. 26, 2012) ("[C]onclusory allegations that defendants were aware of plaintiff's medical

---

[10]  Plaintiff has not alleged that any of the Defendants to whom he complained were involved in his alleged over medication.  (Dkt. No. 1 at ¶ 73.)

[11]  Plaintiff was cautioned in earlier litigation that absent specific factual allegations of personal involvement – what each defendant "did, or failed to do, and how such action or inaction violated [his] rights" – the defendants for whom such allegations are missing are entitled to dismissal of the action.  *Flemming v. Goord*, No. 06-CV-26, 2007 WL 2726276, at *2, 2007 U. S. Dist. LEXIS 99964, at 6* (N.D.N.Y. Sept. 13, 2007); *see also Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (citation and internal quotation marks omitted).

needs and chronic pain but failed to respond are generally not sufficient proof of defendant's deliberate indifference and cannot survive a Rule 12(b)(6) motion to dismiss.") (citing *Adekoya v. Holder*, 751 F. Supp. 2d 688, 691, 697 (S.D.N.Y. 2011) (finding conclusory allegations that medical staff defendants were aware of plaintiff's medical needs and failed to provide adequate care insufficient to defeat a motion to dismiss a claim of inadequate medical care); *Thomas v. Douglas*, No. 9:09-CV-0548 (GLS/DEP), 2010 WL 3724183, at *5, 2010 U.S. Dist. LEXIS 97660, at *15 (N.D.N.Y. Aug. 12, 2010) (deliberate indifference claim set forth in wholly conclusory terms alleging that plaintiff was merely "continuously denied proper treatment," without supporting facts to establish a plausible medical indifference claim cannot survive a motion to dismiss).  This case is no exception.

Plaintiff has failed to "plead[] factual content that allows [me] to draw the reasonable inference that [Defendants Johnson, Atkinson, Sullivan, Smith White, Harvey, and Nakahara are] liable for the misconduct alleged" by him.  *Iqbal*, 556 U.S. at 664.  Therefore, I recommend that Plaintiff's claim against those Defendants with regard to his allegedly untreated weakness in October of 2009 be dismissed, with leave to amend in deference to Plaintiff's *pro* se status.

**B.    Plaintiff's Left Shoulder, Back, Hip, and Knee Complaints**

Plaintiff claims that from July 2008 to 2011, Defendant medical staff, knowing that Plaintiff had a frozen left shoulder and back, hip and knee problems, failed to examine, diagnose, and give him the treatment, therapy, and pain medication he needed for those problems.  (Dkt. No, 1 at ¶¶ 63, 65, 67.)   Plaintiff alleges that at an unspecified point, or points, in time, he complained about his shoulder, back, hip, and knees to Defendants Weissman, Smith, Johnson, Nakahara, Waterson, White, Holmes, Griffith, Gordon, Hammac, R. Cook, N. Cook,

Chesbrough, Sullivan, Lordi, and Atkinson, and asked them if he could go to therapy and be examined by a doctor for pain and his physical problems. *Id*. at ¶¶ 72-73. Plaintiff contends his requests were denied. *Id*.

Except for describing his left shoulder as frozen and making a passing reference to arthritis, Plaintiff's Complaint includes no factual allegations regarding the specific nature of his shoulder, back, hip and knee problems. Plaintiff has, however, included as exhibits to his Complaint: (1) a May 26, 2004, SUNY Upstate Medical University Consultation Request which gave a clinical history of his frozen left shoulder and requested an evaluation of the shoulder for rotator cuff problems; (2) a physical therapy report from Walsh Physical Therapy, dated July 16, 2004, regarding Plaintiff's left shoulder, describing Plaintiff as having moderate functional limitations in the shoulder, including impaired mobility, and reporting significant improvement, with increased mobility but with some residual deficits; and (3) an October 5, 2005 response to Plaintiff's sick call request from a non-party Upstate physician assistant commenting that x-rays had shown minimal arthritis in Plaintiff's left knee and hip. (Dkt. No. 1 at 55-56, 66.) In addition, in opposition to Defendants' motion, Plaintiff has submitted: (1) an October 2003 radiology report identifying degenerative discogenic change L4-L5 & L5-S1, mild degenerative spondylosis at S1 level, and no evidence of fracture or misalignment; (2) a December 2003 consultant report referencing a negative study – no disc disease and no significant stenosis; and (3) a June 14, 2004, consultant report describing an MRI as indicating no significant spinal abnormalities, recommending leg and back strengthening exercises to restore Plaintiff's normal gait, noting impaired shoulder function, and referencing Plaintiff's statement with regard to his left shoulder pain that he had been somewhat okay until a recent fall. (Dkt. No. 39-1 at 24-25,

29.)  Because Plaintiff claims to have been completely deprived of treatment for his frozen left shoulder, back, hip, and knee problems, I must consider whether he has made a facially plausible showing of a serious medical condition with regard to each.  *See Salahuddin*, 467 F.3d at 280.

### 1.    Frozen Left Shoulder

 Reduced shoulder mobility, when accompanied by severe pain, has been found adequate to raise a factual issue on the question of serious medical need.  *See Sereika v. Patel*, 411 F. Supp. 2d 397, 406 (S.D.N.Y. 2006) (allegations of "severe pain . . . [and] reduced mobility . . ." in the shoulder are sufficient to raise a material issue of fact as to plaintiff's serious medical need).  Documentation submitted by Plaintiff reveals that he had problems with shoulder mobility in 2004.  (Dkt. No. 1 at 55-56.)  In addition, Plaintiff has alleged pain in connection with his left shoulder, back, hip, and knee claim.  (Dkt. No. 1 at ¶ 72.)  Although Plaintiff has not pleaded specific facts with regard to the severity of the pain, I find that a painful, frozen shoulder cannot be ruled out as a serious medical condition for purposes of this motion.

### 2.    Back

"The question of whether persistent back pain rises to a level of constitutional significance depends upon the circumstances of the particular case  presented."  *Williams v. Smith*, No. 02 Civ. 4558(DLC), 2009 WL 2431948, at *8, 2009 U.S. Dist. LEXIS 69871, at *22 (S.D.N.Y. Aug. 10, 2009).[12]  Plaintiff has alleged generally that he had back pain.  (Dkt. No. 1 at

---

[12]  There are a number of decisions in this Circuit in which courts have declined to find back pain to be a serious medication condition.  *Gillespie v. New York State Dept. of Correctional Services,* No. 9:08-CV-1339 (TJM/ATB), 2010 WL 1006634, at *5, 2010 U.S. Dist. LEXIS 26246, at *16-17 (N.D.N.Y. Feb. 22, 2010) (court finding it extremely questionable that plaintiff had alleged a medical condition sufficiently serious for an Eighth Amendment claim where he described back pain over three years as "intermittent," "chronic," "increasing," and on one occasion "severe"; but never as "extreme," "excruciating," or "unbearable.");  *Salaam v.*

¶¶ 61, 69, 72.)  He has also alleged that prior to July of 2008, Defendant Johnson had increased

his back pain medication.  *Id*. at ¶ 69.  However, aside from his general allegations of pain and

having previously received pain medication, Plaintiff has failed to allege specific factual

material regarding his alleged back problem or the degree of his pain during the time relevant to

his claim.  (Dkt. No. 1at ¶¶ 69, 72.)  Furthermore, the October 2003 radiology report and

December 2003 consultant report referenced above fail to show a serious medical condition.[13]

Therefore, I find that Plaintiff has failed to allege a serious medical condition with regard to his

back.  *See Phillips v. Goord*, No. 08-CV-0957A(F), 2009 WL 909593, at *6, 2009 U.S. Dist.

LEXIS 29322, at *18 (W.D.N.Y. Apr. 1, 2009) (court ruling that claim would be dismissed for

failure to plead factual allegations supporting plaintiff's claim that chronic back pain was a

serious medical condition unless he filed an amended complaint setting forth facts sufficient to

state a claim).

      3.      <u>Hip and Knees</u>

      As with his back claim, other than a general allegation of pain, Plaintiff has failed to

provide any specific factual matter regarding his alleged hip and knee problems during the time

---

*Adams*, No. 9:03-CV-0517 (LEK/GHL), 2006 WL 2827687, 2006 U.S. Dist. LEXIS 70963
(N.D.N.Y. Sept. 29, 2006) (finding that plaintiff's injuries did not constitute a serious medical
condition where plaintiff suffered from intermittent back pain requiring pain relievers and
physical therapy); *Veloz v. New York*, 339 F. Supp. 2d 505, 522-26 (S.D.N.Y. 2004) (chronic
back pain and mild to moderate degenerative arthritis did not constitute a serious medical need);
*Gomez v. Zwillinger*, No. 94 Civ. 8739 (LLS) (RLE), 1998 U.S. Dist. LEXIS 17713, at *16
(S.D.N.Y. Nov. 6, 1998) (holding that back pain and discomfort were not sufficiently serious).

    [13] Medical records submitted by Plaintiff in opposition to Defendant's motion reveal
some degenerative discogenic changes at L4-L5 & L5-S1 and mild degenerative spondylosis at
S1 level in the fall of 2003 and a finding of no disc disease or spinal stenosis in the winter of that
year.  (Dkt. No. 39-1 at 25.)

relevant to his claim. The October 5, 2005, sick call response noted that x-rays at that time showed minimal arthritis in Plaintiff's left knee and hip. (Dkt. No. 1 at 66.) While chronic degenerative hip conditions can be found to constitute a serious medical need, *see Hathaway*, 37 F.3d at 67, Plaintiff has not alleged facts suggesting that he suffers significantly from any such condition. Degenerative arthritic knee conditions have not been found to constitute serious medical conditions. *See Taylor v. Kurtz,* No 00-CV-0700F, 2004 WL 2414847, at *2-4, 2004 U. S. Dist. LEXIS 27925, at *5-6, 8-13 (W.D.N.Y. Oct. 28, 2004) (prisoner's degenerative arthritic knee condition did not constitute a serious medical need); *Johnson v. Wright*, 477 F. Supp. 2d 572, 575 (W.D.N.Y. 2007), *aff'd*, 342 F. App'x. 144 (2d Cir. 2009) (medical conditions and injuries such as torn meniscus, arthritis, and ligament tears are not sufficiently serious). Inasmuch as Plaintiff has failed to allege specific facts showing his hip and knee problems to be severe enough to constitute a serious medical condition, I find that Plaintiff has not satisfied the objective element of his Eighth Amendment claim.

### 4.    Subjective Element

Moreover, Plaintiff has failed to make a plausible showing of deliberate indifference by the sixteen Defendants who are alleged to have known of his left shoulder, back, hip, and knee problems, failed to diagnose them, and denied his requests for therapy and medical care.[14] (Dkt. No. 1 at ¶¶ 69, 72.) Plaintiff has made no specific factual allegations as to how any of the sixteen

---

[14] In addition to the sixteen Defendants specifically identified by Plaintiff as having known of his shoulder, back, hip, and knee problems and done nothing, Plaintiff has alleged generally that the medical staff as a whole knew of and failed to act with regard to those alleged problems. However, Plaintiff has included no facts whatsoever with regard to personal involvement of Defendants other than the sixteen identified as knowing of his medical problems. (Dkt. No. 1 at ¶ 67.) *See Wright*, 21 F.3d at 501 (personal involvement is a prerequisite to an award of damages under § 1983).

Defendants acted in a deliberately indifferent manner.  *Chance*, 143 F.3d at 703.  The absence of specific allegations as to how each of the Defendants acted improperly is fatal to his medical indifference claim with regard to his left shoulder, back, hip, and knee problems.  *See Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir. 1987) ("[B]road, simple, and conclusory statements are insufficient to state a claim under § 1983."); *see also Gumbs,* 2012 WL 3705009, at *12; *Adekoya*, 751 F. Supp. 2d at 691, 697; *Thomas*, 2010 WL 3724183, at *5.

Given the failure of Plaintiff's Complaint to do more than "tender[] naked assertion[s] devoid of further factual enhancement," *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted), I find that Plaintiff has failed to state a claim for inadequate medical care in violation of his Eighth Amendment rights against Defendants Weissman, Smith, Johnson, Nakahara, Waterson, White, Holmes, Griffith, Gordon, Hammac, R. Cook, N. Cook, Chesbrough, Sullivan, Lordi, and Atkinson with regard to his alleged left shoulder, back, hip, and knee problems.  I therefore recommend that the claim be dismissed with Plaintiff being granted leave to amend.

### C.    Plaintiff's Cane

Plaintiff has alleged that on July 29, 2010, Defendant Adams took away the walking cane he used for left side and left leg weakness.[15]  (Dkt. No. 1 at ¶ 68.)  Medical records attached to Plaintiff's Complaint reveal his use of a cane in December of 2003 and July of 2004, but are not clear as to why.  *Id.* at 56, 61.  A June 2005 radiology report on a bilateral carotid ultrasound

_____

[15]  Plaintiff filed a grievance on July 30, 2010, complaining that Adams, who had only been at Upstate for three weeks and never seen Plaintiff before, took away his walking cane without an MRI or x-ray and discontinued some of Plaintiff's medications.  (Dkt. No.1 at 53.) Plaintiff's Complaint does not contain allegations as to the outcome of the grievance, nor has he attached any documents regarding the outcome to his Complaint.

done for left side weakness, also attached to Plaintiff's Complaint, showed a normal bilateral carotid and normal antegrade vertebral artery flow. *Id*. at 54. The Superintendent's determination on an appeal from what appears to have been a September 6, 2010 grievance by Plaintiff complaining of being deprived of the use of a cane, indicates that Plaintiff had been medically evaluated on September 30, 2010 to assess any lasting effects from a fall on September 28, 2010 and was found not to need any medical supportive devices, including a cane. *Id*. at 57.

None of the above supports Plaintiff's claim that he required the use of a walking cane at the time Adams took his away, or at any other time relevant to his Complaint, and Plaintiff has failed to allege specific facts which support his claim that he had a medical need for a cane. Furthermore, Plaintiff's conclusory assertions fail to make a facially plausible showing that Adams acted with deliberate indifference in taking away Plaintiff's cane in July of 2010. *See Gumbs,* 2012 WL 3705009, at *12; *Adekoya*, 751 F. Supp. 2d at 691, 697; *Thomas*, 2010 WL 3724183, at *5. I therefore recommend that Plaintiff's Eighth Amendment claim against Adams for taking away his cane be dismissed with leave to amend.

### D.      Taking Away Plaintiff's Pain Medication

Plaintiff has alleged in conclusory fashion that Adams took away his pain medication at the same time he took away his cane. *Id*. at 68. Plaintiff's failure to include specific facts regarding the medication involved, the medical condition for which he was taking the medication, and facts and circumstances surrounding the alleged discontinuance of the medication is fatal to his claim. I therefore recommend that his Eighth Amendment claim against Adams for discontinuing Plaintiff's pain medication be dismissed with leave to amend.

### E.    Plaintiff's Concussion, Head Pain, and Nosebleeds

Plaintiff was diagnosed with a concussion when he was taken to the hospital emergency room on September 28, 2010, after a fall.  (Dkt. Nos. 1 at ¶ 74; 39-1 at 7-9.)  He was admitted to the Upstate infirmary when he was discharged from the hospital and prescribed Flexeril and Tylenol for five days.  (Dkt. No. 1 at 52.)  Plaintiff has alleged in his Complaint that despite complaints of head pain and nose bleeds to Defendants Adams, Smith, Waterson, Atkinson, Sullivan, Lordi, Conklin, Hammac, Travers, White, Holmes, Griffith, R. Cook, and Schruyer over the nine month period following the concussion, it was never addressed by the medical staff.[16]  (Dkt. No. 1 at ¶ 74.)

Although headaches and nosebleeds can, if sufficiently severe, constitute serious medical conditions, Plaintiff has not pleaded factual material sufficient to make a facially plausible showing that they were in his case.  Moreover, even if I were to assume for purposes of this motion that Plaintiff has satisfied the objective element, his conclusory allegation that he complained to Defendants, without any factual detail whatsoever regarding the alleged complaints and the individual Defendants' responses, cannot be found sufficient to satisfy the subjective element – a showing of deliberate indifference by Defendants – of his Eighth Amendment claim.  *See Gumbs,* 2012 WL 3705009, at *12;  *Adekoya*, 751 F. Supp. 2d at 691, 697; *Thomas*, 2010 WL 3724183, at *5.  Therefore, I find that Plaintiff has failed to state a claim of medical indifference in violation of his Eighth Amendment rights against Defendants Adams, Smith, Waterson, Atkinson, Sullivan, Lordi, Conklin, Hammac, Travers, White, Holmes,

---

[16]    Although Plaintiff complains that he was not treated for his concussion, head pain and nosebleeds are the only physical problems he has identified as possibly related to the concussion. (Dkt. No. 1 at ¶¶ 74-75.)

Griffith, R. Cook, and Schruyer with regard to his concussion related claims, and recommend that the claim be dismissed with leave to amend.

### F.     Plaintiff's Elevated Blood Platelets

Plaintiff complains that although his blood platelet count was found to be abnormally high in mid-March of 2011, the medical and nursing staff did nothing for him until a decision was made by Defendant Adams to send Plaintiff to an outside doctor in April of 2011.  (Dkt. No. 1 at ¶¶ 76, 78-79 and 30.)  Plaintiff was seen by a hematologist on April 26, 2011, and based upon the hematologist's recommendation, was prescribed medication to address the platelet issue.  (Dkt. No. 1 at 35.)   Plaintiff has not alleged any injury as a result of the alleged delay in sending him to an outside specialist.

Given that Defendant Adams found Plaintiff's elevated blood platelets sufficiently serious to refer him to an outside hematologist, I will assume for purposes of Defendants' motion that he has satisfied the objective element of a medical indifference claim.  However, I find that Plaintiff has failed to show deliberate indifference by Adams or any other Defendant.[17] Deliberate indifference requires an inmate to prove that "the prison official knew of and disregarded the prisoner's serious medical needs."  *Chance*, 143 F.3d at 702.  Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."  *Estelle*, 429 U.S. at 104.  When the basis for an inmate's medical indifference claim is "a temporary delay . . . in the provision of otherwise

---

[17]  With the exception of Defendant Adams, identified in a document attached to Plaintiff's complaint, Plaintiff has not identified specific Defendants as having been personally involved in the alleged delay in treating him for his elevated blood platelets.  *See Wright*, 21 F.3d at 501 (personal involvement is a prerequisite to a claim for damages under § 1983).

adequate treatment, it is appropriate to focus on the challenged *delay* . . . in treatment rather than the prisoner's *underlying medical condition* alone in analyzing whether the alleged deprivation is, 'in objective terms, sufficiently serious,' to support an Eighth Amendment claim." *Brunskill v. County of Suffolk*, No. 11-CV-586 (SJF)(ETB), 2012 WL 2921180, at *3, 2012 U.S. Dist. LEXIS 99264, at *10 (E.D.N.Y. Jul. 11, 2012) (citing *Smith,* 316 F.3d at 185).

On a claim based upon a significant delay in receiving treatment, "a plaintiff must allege that the individuals causing the delay had the requisite state of mind, which . . . is the equivalent of criminal recklessness." *Jones v. Vives*, ___ F. App'x ___, 2013 WL 3214616, at *2, 2013 U.S. Dist. LEXIS 13178, at *3 (2d Cir. June 27, 2013).  Inasmuch as Plaintiff was seen by an outside hematologist within six weeks of the blood test showing an abnormally high platelet count, the delay in treatment does not appear to have been significant.  Furthermore, there are no factual allegations suggesting that Adams' state of mind was the "equivalent of criminal recklessness."  To the contrary, the documents attached to Plaintiff's Complaint indicate that Adams was attentive to Plaintiff's medical problem and the need to see an outside specialist. Therefore, I recommend that Plaintiff's Eighth Amendment medical indifference claim with respect to his abnormal blood platelet count be dismissed with leave to amend.

## V.      PLAINTIFF'S RULE 12(b)(2) MOTION TO DISMISS

Because Defendants' Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction challenges the sufficiency of service of the Summons and Complaint on Defendants, it is more properly construed as a motion to dismiss for insufficiency of service of process under Rule

12(b)(5).[18]  Fed.R.Civ.P. 12(b)(5).  "Before a federal court may exercise personal jurisdiction

over a defendant, the procedural requirement of service of a summons must be satisfied."

*Dynegy Midstream Serv. v. Trammochem*, 451 F.3d 89, 94 (2d Cir. 2006) (citation and internal

quotation marks omitted).  An objection to service of process "must be specific and must point

out in what manner the plaintiff has failed to satisfy the requirements of the service provision

utilized." *See Koulkina v. City of New York*, 559 F. Supp. 2d 300, 312 (S.D.N.Y. 2008) (citation

and internal quotation marks omitted).  Once the defendant has done so, the plaintiff bears the

burden of proving adequate service.  *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298-99 (2d Cir.

2009).

    The standards for service of process are set forth in Rule 4 of the Federal Rules of Civil

Procedure.  They are to be "liberally construed, to further the purpose of finding personal

jurisdiction in cases in which the party has received actual notice."  *Grammenos v. Lemos*, 457

F.2d 1067, 1070 (2d Cir. 1972.)  Still, "there must be compliance with the terms of [Rule 4], and

absent waiver, incomplete or improper service will lead the court to dismiss the action unless it

appears that proper service may still be obtained." *Id*.  Where service is found improper or

invalid, the district court has the power to cause new or additional summonses to be issued and

good service attempted.  *Id*.  at 1071.  *See also Beatie and Osborn LLP v. Patriot Scientific

Corp*., 431 F. Supp. 2d 367, 385, n.11 (S.D.N.Y. 2006) ("courts in this jurisdiction have 'broad

discretion to dismiss the action or retain the case but quash the service that has been made on the

defendant.'") (quoting *Howard v. Klynveld Peat Marwick Goerdeler*, 977 F. Supp. 654, 658

_____

[18]  Motions challenging the sufficiency of service of process are properly made under
Rule 12(b)(5), not Rule 12(b)(2).  *See Koulkina v. City of New York*, 559 F. Supp. 2d 300, 310,
n.9 (S.D.N.Y. 2008).

(S.D.N.Y. 1997)).

Plaintiff attempted to effect service on the Defendants, current or former employees at Upstate, by sending envelopes containing the Summons and Complaint, each addressed to the Superintendent and one of the Defendants, through the intra-facility mail at Upstate. (Dkt. Nos. 27, 30, and 36-2.) The method of service relied upon by Plaintiff does not comply with Rule 4(e), which sets forth the permissible methods of service on an individual within the judicial district.[19] However, because I cannot rule out the possibility that Plaintiff could effect proper service, and Plaintiff has requested the issuance of new summonses and an opportunity to re-serve, I recommend that: (1) in the event the District Court denies Defendants' Rule 12(b)(6) motion, in whole or in part, service of the original Summons and Complaint be quashed, new summonses be issued, and Plaintiff be granted additional time to re-serve the Summons and Complaint; and (2) in the event the District Court dismisses Plaintiff's Complaint under Rule 12(b)(6) and allows leave to file an amended complaint which then survives initial review, that new summonses be issued and Plaintiff be allowed time to serve the summons and amended complaint in accordance with the provisions of Rule 4.

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Defendants' Rule 12(b)(6) motion to dismiss (Dkt. No. 36) be **GRANTED** and Plaintiff's Complaint be dismissed in its entirety, without prejudice, and with leave to amend; and it is further

---

[19] The Hon. Thomas J. McAvoy, Senior United State District Judge, has previously instructed Plaintiff that service of defendants by mail in care of the prison superintendent is ineffective because it does not comply with the Federal Rules of Civil Procedure. *See Flemming v. Kemp*, No. 9:09-CV-1185 (TJM/DRH), Dkt. No. 131, at 10 (N.D.N.Y. July 28, 2011).

**RECOMMENDED** that in the event Plaintiff's Complaint is not dismissed in its entirety, that service of the Summons and Complaint on the Defendants be quashed, new summonses be issued, and Plaintiff be allowed additional time to effect service on any remaining Defendants in accordance with Rule 4; and it is further

**RECOMMENDED**, that in the event Plaintiff's Complaint is dismissed, and he is granted leave, and thereafter files an amended complaint which survives initial review, that new summonses be issued for all Defendants named in the amended complaint to be served with the amended complaint in accordance with Rule 4; and it is hereby

**ORDERED** that the Clerk's office provide Plaintiff with copies of all unpublished decisions cited herein.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: August 22, 2013
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge